YAPPEL ET AL. *v.* MOZINA.

(Decided September 30, 1929.)

*Mr. J. J. Tetlow,* for plaintiffs in error.
*Mr. Harry F. Glick,* for defendant in error.

VICKERY, P. J.    This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county, the purpose being to reverse a judgment that was directed by the court against the plaintiffs in error, Jacob Yappel and Gertrude Yappel, who were plaintiffs below, in favor of the defendant in error, John Mozina, who was defendant below.

From the record and argument of counsel and the briefs, we learn that the plaintiffs were the father and mother of a young man, and that this young man, their son, had borrowed of the defendant below, John Mozina, at different times, in various amounts, until the whole equaled $4,700; that as evidence of this indebtedness defendant below held the notes of the son of the plaintiffs for $4,700, some of which were secured by chattel mortgages upon property owned by the son, he being in the flour and feed business, which place of business seems to have been located on the rear of the lot owned by the plaintiffs below; and that he lived with them in their home, and that he was their only son, unmarried, and they were his heirs at law.

It seems further that the son's life was insured,

and his father and mother were named as the bene-
ficiaries, the premiums for which insurance I believe
had been paid by the father and mother, the plain-
tiffs in the court below.

Just prior to the events which give rise to this
cause of action, the young man was killed in an acci-
dent somewhere near Elyria, and it appears that
the defendant below did not know of the death of
the son, but, upon an invitation from the son, had
appeared at his home, which was that of the father
and mother, expecting to be paid some money on
the notes that he held against the son. When de-
fendant arrived at the residence of the father and
mother, he found that an accident had happened,
that the son had been killed, and that his body was
laid out in the home of his parents. Then some-
thing took place which rather shocks the sense of
propriety, and that is, in spite of the grief and sad-
ness which must have permeated the home, defend-
ant insisted upon having his business transacted
then and there, and he either carried with him or
wrote there a cognovit note for the amount of
$4,700, or thereabouts, which the father and mother
signed.

Subsequently, after the insurance money upon the
son's life had been paid to them, the plaintiffs paid
on the $4,700 note the sum of $2,800 and gave a new
note for $2,000, the $2,800 including the interest
upon the amount for which the cognovit note was
given, and payment on the principal included, so
that it left a balance of $2,000. Subsequently, a
certain amount of money was paid upon this note,
after which the plaintiffs brought this action, charg-
ing that the $4,700 note had been obtained from

them by false and fraudulent representations, in that it was stated to them that they were liable for their son's obligations, and that the holder of the claims against the son could make them pay, and ultimately, if necessary, could sell their home, or words to that effect. It is said that the plaintiffs, relying upon this, and being ignorant persons, believed the statements of the defendant below and signed the note, and that there was no consideration for the note.

Defendant filed an answer setting up what purported to be a defense, and the case came on for a trial. The jury was impaneled and sworn, and the plaintiffs stated their cause of action, read their petition, and stated what they expected to prove, after which the defendant, through his counsel, stated what he regarded the facts to be, which were to the effect that the business that was carried on by the son of the plaintiffs, the flour and feed business, was carried on on the premises of the plaintiffs, that the son was unmarried and was the only child, that the father and mother were the heirs at law of what property the son had left, and that, when the defendant below went to get the money, plaintiffs did not want, as they stated to him, any trouble or any expense, and so they agreed that, if he would surrender the notes which the son had given to him, they would give their note and take care of the indebtedness, and would run the business that the son had theretofore managed, and, also, that they would pay the obligation. This and some further statements were made, after which and the reading of the answer the plaintiffs moved for a directed verdict upon the statement of counsel for

the defendant, claiming that he did not set up any defense, that he did not show any consideration, and therefore had no defense at all. Whereupon the defendant likewise moved for a directed verdict, on the ground that the petition did not state a cause of action and that the statement of counsel did not state a good cause of action.

At this stage of the proceedings the court sent the jury out, and some discussion was had between the court and the attorneys, and finally the court granted the defendant's motion, thus indirectly overruling the plaintiff's motion. The court entered up judgment for the defendant, and it is to reverse that judgment that error is prosecuted here.

As already stated, it was in exceeding bad taste for the defendant, when the body of plaintiffs' son lay dead in their house, to insist upon payment of the claims which the son owed him. There was no legal responsibility up to this time for the father and mother to pay the son's debts, and there was no liability upon them, and to make the statement that they were responsible was clearly a misrepresentation of what the law was; that is, it was a misstatement, for there was no law which made the father and mother liable for these notes; but, whether or not there are cases where misrepresentation of law has been the basis for an action for relief, it is difficult to imagine a case based upon misrepresentation where the misrepresentation relates to the law alone. Each man is supposed to know the law, and, unless there be some confidential relation, or a relation a little different than that in which these persons were, the mere representation of what the law was, even though falsely stated, could not be the

basis for an action. Of course, if there were no consideration, and through these misrepresentations the father and mother were induced to part with twenty-eight hundred or more dollars, and their note for the balance, when there was no liability at all, undoubtedly they might maintain an action to recover that money; not, however, in deceit, but upon the basis of money had and received, for it then would have been paid to this man where there was no consideration. But is that quite the case at bar?

Now the father and mother, being the heirs at law of their son, were in a measure liable, or at least the property that the son had left to them, or which they would inherit as being his heirs, was chargeable with the payment of the debts of the son, and that would reduce the amount of property that would be coming to the father and mother out of the son's estate, and the defendant below clearly had the right to go into court as a creditor and have an administrator appointed, and the administrator could have taken possession of this business and sold it for the payment of this debt, together with others.

Now apparently from the statements of counsel for defendant the parents of the young man did not want this to happen. They apparently wanted to carry on this business, and so they agreed with the defendant that they would give him a note for the indebtedness of the son, for which the defendant delivered over to them his claim against the estate, and he never thereafter made any claim against the estate. Now to say that there was no consideration for this note when he surrendered the chattel

mortgages and the notes which he held against the son to the father and mother, upon their signing this note, is saying what is not true, and as a matter of law this would be a good consideration for the note; and, consequently, when this statement was made by counsel for the defendant in the court below, and the plaintiffs made a motion for a directed verdict, the statement of the defense was admitted to be true, that there was a consideration for this note, and this also had the effect of permitting the court to pass on the allegations of the petition, which contained the representations made as to what the law was, which, strictly speaking, were not true, yet, in a measure, the *property* of the son, as already stated, would be liable for the obligation to the defendant.

Now, in order to keep that property intact, the father and mother might readily agree to the giving of their note, and, as already stated, the surrender of the notes and securities which defendant held against the son would be an ample consideration for the note that was given by them.

The question then arises: Did the petition and the statement of counsel state a cause of action? If I understand this cause of action it was based upon deceit and the false representations that were made as to the responsibility of the father and mother for the debts of the son. Now, of course, that is a statement of law, and as a general rule one cannot predicate a right to recover damages upon a misstatement of the law, even though it is meant to be acted upon and believed by the parties to whom it is made, and is acted upon, because all of this took place in this state, and the representation was not the law

of a foreign state, but of the state of Ohio, and the plaintiffs below were charged with knowing the law, as well as the defendant, and if they believed these statements which he made they did so at their peril.

Now, when the whole record was submitted to the court, the judge had the defendant's claim, which set up the manner in which these notes were surrendered and the new note taken for them, and the giving up of a claim of the defendant to the right of administration, or to see that the property of the son was administered, and, on the other hand, he had the statement of the plaintiffs that the defendant misrepresented the law under which they would be liable.

Now, inasmuch as both the defendant and the plaintiffs made motions, this clearly made the case one triable to the court, and the court must be the judge of the law and of the facts in the case, and as a basis for this contention we cite the case of *Strangward* v. *American Brass Bedstead Co.*, 82 Ohio St., 121, 91 N. E., 988, in which the first proposition of the syllabus reads:

"A motion by each party in a jury case, after the impaneling of the jury in the court of common pleas, to direct a verdict in his favor on the pleadings, made to the court before evidence is offered, is a waiver of a jury trial and a submission of the case to the court, and a party cannot, as of right, after his motion has been overruled, and that of the other party sustained, give evidence in support of his case."

We think this case comes squarely within this decision, and is not at all influenced by the case of

*Pittsburgh, C., C. & St. L. Ry. Co.* v. *Luthy, Admr.,* 112 Ohio St., 321, 147 N. E., 336.

We are constrained to come to the conclusion that the judgment of the court below must be affirmed.

*Judgment affirmed.*

Sullivan and Levine, JJ., concur.